Arthur L. OLIVER, Warden, California State Prison, Appellant,

v.

Maurice E. BOWENS, Appellee.

No. 21270.

United States Court of Appeals Ninth Circuit.

Nov. 28, 1967.

JOHNSEN, Circuit Judge.

Bowens, a California prisoner, after exhausting state remedies, was granted a federal writ of habeas corpus, and the warden of the prison, on certificate of probable cause issued by the district judge, has appealed. We affirm.

The basis relied on by Bowens for relief was the alleged illegality of the two searches and seizures underlying his conviction—one made of his person and the other of his apartment. The conviction involved was for the offense under California law of possessing marijuana— here four marijuana cigarettes. Two of the cigarettes had been taken by the Los Angeles police from Bowens' coat pocket on the street and the other two from a dresser drawer in the bedroom of his apartment.

The object of both searches admittedly had been to find narcotics. They were made without warrants; they were not a product of such on-the-scene circumstances or events as could provide probable cause for engaging in a marijuana thrust against either Bowens' person or his dwelling; and they did not have inherent legal incidence to the arrest made of him. The search of his person occurred before the arrest; the arrest was made on the street; and the search of his apartment was engaged in followingly.

Indeed the Attorney General of California does not attempt to justify either search here upon any of these grounds. His contention is that they both were valid as a matter of consent on the part of Bowens and that the determination made by the California courts that such consent existed should be accepted by the federal courts. The California trial court had concluded on hearing of the motion to suppress that there had been consent; the District Court of Appeals had affirmed the holding, People v. Bowens, 219 Cal.App.2d 596, 33 Cal.Rptr. 362; and the California Supreme Court had refused to reopen the question on Bowens' habeas corpus attempt before it.

———◆———

Thomas C. Lynch, Atty. Gen., Edsel W. Haws, Deputy Atty. Gen., Daniel J. Kremer (appeared), Deputy Atty. Gen., Sacramento, Cal., for appellant.

Maurice E. Bowens, in pro. per.

Before JOHNSEN *, BARNES and ELY, Circuit Judges.

* Harvey M. Johnsen, Senior Circuit Judge of the Eighth Circuit, sitting by designation.

With due regard for the conclusion of the California courts, we think the circumstances presented such a situation of possible infirmity as reasonably to entitle Judge Halbert to engage in federal scrutiny and to arrive at the determination of invalidity which he did.

The events involved occurred about 9:00 o'clock p. m. Two Los Angeles policemen on routine patrol in a cruiser car had their attention attracted to an automobile standing in the street, because its rear end extended out three or four feet into the traffic lane and it also was partially blocking an apartment driveway. They further observed in approaching that it had an out-of-state license plate which did not bear a current tab. The officers drove alongside and one of them got out and went around to the right side of the parked car. Two men were seated in the car, one of whom was Bowens.

The officer recognized Bowens from having made an arrest of him six weeks previously for possession of marijuana. At this point, such parking or other motor vehicle infraction as might have been involved was apparently allowed to fade out of the picture, except in the opportunity which it had presented for engaging in general interrogation of Bowens. The officer immediately shifted the conversation to the field of narcotics. His testimony on the motion to quash contained some variations but, from the story with which he began, after he had recognized Bowens and Bowens had gotten out of the car he asked Bowens "whether he was still using or carrying narcotics". When Bowens replied that he was not, the officer asked "if he minded if he checked him to see if he had any marks on him".

The officer conceded that Bowens made no verbal reply to this request but said that "he put his arms out sideways". The officer however did not engage in scrutiny as to whether Bowens' arms contained "marks" but instead "patted" his coat pockets and "after feeling something in his upper left pocket I reached in there" and took out the two marijuana cigarettes. Bowens' testimony was that the officer had requested him to roll up his sleeves "and as I went to do like that, then he patted me".

After taking the two cigarettes from Bowens' pocket, the officer handcuffed him and immediately moved on to the matter of getting into his apartment. The apartment was located in the building in front of which the car was standing, and the officer had been inside it at the time he previously arrested Bowens. "I asked him if he had any narcotics up there". When Bowens replied that he did not, "I asked him if he minded if we took a look, and he said no, and he then agreed to accompany us". "When we got to the door of the apartment, the defendant opened the door and we entered". The one officer, however, kept Bowens handcuffed in the living room while the other proceeded, without any further expression of request or consent being passed between the parties, into the bedroom and entered upon a general search.

Judge Halbert was of the view that the conduct, circumstances and scant expression involved did not demonstrate consent amounting to "intentional and voluntary relinquishment of a known constitutional right" within the standards and prescriptions declared by the Court's unanimous en banc opinion in United States v. Page, 302 F.2d 81, 83–84 (9 Cir. 1962):

"Because of the importance of preserving constitutional rights, various rules have been stated for the guidance of the trial judge in determining whether consent to the search was in fact given. The government must prove that consent was given. It must show that there was no duress or coercion, express or implied. The consent must be 'unequivocal and specific' and 'freely and intelligently given'. There must be convincing evidence that defendant has waived his rights. There must be clear and positive testimony. ' "Courts indulge every reasonable presumption against waiver" of fundamental constitutional

rights'. Coercion is implicit in situations where consent is obtained under color of the badge, and the government must show that there was no coercion in fact. The government's burden is greater where consent is claimed to have been given while the defendant is under arrest".

 We think the situation amply afforded basis for the appraisal and conclusion at which Judge Halbert arrived. Bowens' putting out his arms sideways in response to a query whether he minded allowing the officer to check "if he had any marks on him" could hardly be said to be naturally indicative or persuasive of the giving of an intended consent to have the officer switch instead to a general search of his pockets—in which he had two marijuana cigarettes. Equally was there basis for the court to regard the search made thereafter of Bowens' apartment as not being satisfying of a voluntary consent with the impact inherent from the official authority exercised over him, in having made a search of his person without expressed consent; in having placed him under arrest and put handcuffs on him; and in pressing him in implicational follow-up with whether "he minded if we took a look", when he had just declared to them that there was nothing in the apartment to conceal. And these shadows were hardly made any less gray by the circumstance that upon their custodial march into the apartment one officer kept Bowens in handcuffed restraint in the living room while the other moved freewheelingly into the bedroom without seeking or apparently desiring any further information or assurance as to where or how far he was at liberty to go.

The Attorney General of California, however, has attemped to argue that it is not necessary to the validity of the searches that consent actually should have existed, but that it is sufficient if the officers could reasonably conclude that it did. This argument was rejected in Cipres v. United States, 343 F.2d 95, 98 (9 Cir. 1965) and again recently in Oliver v. Amiotte, 382 F.2d 987 (9

Cir. 1967). Its fallacy lies in its attempt to relate the test of justification under the Fourth Amendment for a search (probable cause or reasonable grounds to believe) to a search whose basis (voluntary consent) lies wholly outside the Amendment and is subject to its own test of legal reality.

Affirmed.