No. 13234

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

MILLARD WADE LaFLAMME,

Defendant and Respondent.

---

Appeal from: District Court of the Sixteenth Judicial District,
Honorable A. B. Martin, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
John North argued, Assistant Attorney General,
Helena, Montana
Robert J. Brooks argued, County Attorney, Broadus,
Montana

For Respondent:

John R. Carr argued, Miles City, Montana

---

Submitted: May 27, 1976

Decided: JUL - 8 1976

Filed: JUL - 8 1976

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The state of Montana brings this appeal from an order of the district court, Powder River County, suppressing evidence as illegally seized. The defendant, Millard Wade LaFlamme, was charged with criminal mischief, in violation of section 94-6-102(1)(a), R.C.M. 1947, causing damages of more than $150, a felony.

On January 24, 1975, a .44 magnum pistol was used to damage a weigh station near Broadus. It was known that the defendant owned a .44 magnum and on January 27, 1975, the Powder River County sheriff, accompanied by the Custer County sheriff approached the defendant on the grounds of Miles Community College and asked if a ballistics examination could be made of defendant's weapon. Defendant agreed and went to the room where he stayed, followed by the two peace officers who waited in the room while defendant looked for the weapon. Defendant was unable to find the weapon there. At this point, the Powder River County sheriff suggested that before defendant report the weapon missing, defendant should examine the light utility pickup truck that he owned to see if the pistol was there. Defendant stated in response to this suggestion:

> "'* * * I don't know if it was out there or not', and I said, 'I'd go take a look.'"

After a brief examination of the small pickup truck, the defendant made a comment to the effect:

> " * * * 'Well, I guess it's not here' * * *."

The Powder River County sheriff recalled what happened next:

> " * * * when he quit looking, I said, 'How about behind the seat' and -- 'Well, I don't think so', he said, and I just tipped the seat ahead while I was standing there, and there it laid."

The sheriff confiscated the .44 magnum that he found on the floor of the pickup truck.

- 1 -

The defendant contends that the search made by the Powder River County sheriff of his pickup truck violates the Fourth Amendment's guarantee of freedom from unreasonable searches and the similar guarantee in the Montana Constitution in Article II, Section 11. He further alleges that it violated the section of the Code of Criminal Procedure which codifies these guarantees, section 95-701, R.C.M. 1947. This section authorizes searches to be made:

"(a)  As an incident to a lawful arrest.

"(b)  With the consent of the accused * * *

"(c)  By the authority of a valid search warrant.

"(d)  Under authority and within the scope of a right of lawful inspection granted by law."

At the time of the search there was no lawful arrest and no search warrant, so subsections (a) and (c) are not applicable. The search was not a routine inspection type search contemplated by subsection (d). Therefore the only basis remaining and the only one claimed as the basis for the search is that of subsection (b), that the search was one conducted with the consent of the accused.

The question before this Court is whether defendant gave his consent to have his pickup truck searched. There is a heavy burden of proof required to show that there was a consent. The United States Supreme Court in Bumper v. North Carolina, 391 U.S. 543, 20 L ed 2d 797, 802, 88 S.Ct. 1788, set forth the basic requirement:

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. * * *"

The Ninth Circuit Court of Appeals gave a more elaborate statement of this requirement in Channell v. United States, 285 F.2d 217, 219 (1960), saying:

- 2 -

"A search and seizure may be made without a
search warrant if the individual freely and
intelligently gives his unequivocal and specific
consent to search, uncontaminated by any duress
or coercion, actual or implied. The Government
has the burden of proving by clear positive
evidence that such consent was given."

This Court has expressed a similar view in State v. Peters, 146
Mont. 188, 205, 405 P.2d 642, when it said that appellant through
his " * * * verbal consent and active cooperation 'reflected an
understanding, uncoerced, and unequivocal election to grant [the
authorities] a license which he knew could be freely and effective-
ly withheld.'"

The question to be answered in this case is whether the
words and actions of the defendant were such that a freely given,
unequivocal, and specific consent is shown by clear positive
evidence.

The first evidence is this: At the suppression hearing
the Powder River County sheriff upon questioning by the court
admitted that he had never asked the defendant if he could search
the defendant's room or truck. The crucial question "Can I search
your pickup truck?" was never asked.

Nearly all the cases that deal with the problem of whether
there was a clear and unequivocal consent follow a similar factual
pattern. In those cases, the defendant gives a clear verbal con-
sent but does something which indicates a contrary intent. For
example in Cipres v. United States, 343 F.2d 95, 97, (1965), the de-
fendant, when asked if the authorities could search her bags said,
"Yes, I have nothing to hide." but went on to say that she did not
have the keys to the bags, that the keys were in New York. The
bags were not locked and the authorities searched them. In the
State of Montana v. Tomich, 332 F.2d 987 989 (1964), the deputy
asked the defendant if he could search the trunk of the defend-
ant's car and the defendant said, "Yes, you can." but also said

- 3 -

that he did not have the key so it could not be opened. Defendant had the key in his shoe. The deputy had a locksmith open the trunk and it was searched. In both of these cases the Ninth Circuit found that the search was not a valid unequivocal consent to a search. While this Court is not in full agreement with that interpretation it is clear that in the absence of a positive verbal assent to the search, equivocal conduct alone is insufficient as a basis for an inference of consent to search, which is a waiver of a constitutional right. The district court asked the Powder River County sheriff this question:

> "Q. You just took it from the circumstances, that he was giving his consent? A. Well, he unlocked the door and went in and looked in and said that it wasn't here, and I told him that he should look everywhere that it might be before he reported it missing."

This statement is not the sort of clear evidence required to show the valid unequivocal consent that is required for the waiver of a constitutional right.

A comparison of the facts of this case and _Peters_ shows the substantial difference between the two cases. In _Peters_ defendant gave his verbal assent to the search and actively assisted the authorities in the search. Here, defendant never gave his verbal assent to the search and did all the searching himself. If Peters had told the authorities that he would look for the calves himself and then reported that he had found nothing unusual, the authorities would not have been justified in entering the premises themselves and making their own search. For the same reasons the sheriff here could not search the truck after defendant had looked for the weapon and reported that it was not in the truck.

For a case where no search was made by officers but a rifle was voluntarily turned over to the sheriff who voluntarily

- 4 -

received it, see State v. Williams, 153 Mont. 262, 455 P.2d 634.

For these reasons the order of the district court is affirmed.

_____
                        Justice

We concur:

_____

_____

_____
Justices

_____
Hon. Bernard Thomas, district
judge, sitting in place of Mr.
Chief Justice James T. Harrison.