No. 13434

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

STEVEN ALLEN BROUGH,

Defendant and Respondent.

---

Appeal from: District Court of the Twelfth Judicial District,
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
John F. North argued, Assistant Attorney General,
Helena, Montana
Ronald W. Smith argued, County Attorney, Havre,
Montana

For Respondent:

Weber, Bosch, Kuhr and Dugdale, Havre, Montana
John Warner argued, Havre, Montana

---

Submitted: October 12, 1976

Decided: NOV 2 9 1976

Filed: NOV 2 9 1976

Thomas J. Kearney
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

The State of Montana appeals from an order of the district court, Hill County, the Hon. B. W. Thomas presiding, suppressing as evidence marijuana found in the trunk of defendant's car. The court found the evidence was seized in an illegal search without a search warrant, that the State had failed to prove defendant's consent to the search was voluntary, and that there was no probable cause for a search of the car without a warrant. We affirm.

Officer Gillies of the Havre Police Department stopped a car for speeding 45 m.p.h. in a 25 m.p.h. speed zone at 2:20 a.m. on January 31, 1976, a Saturday. Defendant Brough, the driver, a Havre resident and former high school classmate of Officer Gillies, immediately got out of the car. Officer Gillies recognized Brough and called him by name. Gillies shone his flashlight inside the car and observed a C-B radio and car stereo on the floor on the driver's side, a stereo on the back seat, and a screwdriver, pliers and wrench on the floor in the back. The C-B radio matched the description of several C-B radios that had been reported stolen.

Defendant Brough and the passenger in his car, Cross, were taken into custody on suspicion of possessing stolen property. The car was impounded in the police garage. Defendant Brough and Cross sat in the police car outside the police station for 15-20 minutes alone and handcuffed. Then they were taken into the police station, relieved of their personal possessions, and placed in adjoining cells. Both were given the Miranda warning. During this time defendant Brough placed a tinfoil packet on the booking counter, said he did not know what it was, and it subsequently was determined to contain no dangerous drug or anything illegal.

- 2 -

Defendant Brough was not allowed to post bond on the traffic charge although the officers were authorized to receive bond. His appearance was set for the following Monday. Officer Gillies twice asked defendant Brough to consent to a search of his car and Brough was told he would remain in jail until his car was searched either with his consent or with a search warrant and that he would get out of jail if he consented to the search. Brough did not consent at this time.

Brough was not allowed to make a phone call. Brough's father came to the police station about 4:00 a.m. and (1) was not allowed to see his son, (2) was not informed of the charge against his son, and (3) was not informed of the amount of bail. Brough was not informed of his father's visit. The district court made an express finding that Brough was held incommunicado in jail.

The next morning defendant Brough was taken to a small cubicle in the police station by Sgt. Stremcha and Officer Stinson for the purpose of getting his consent to a search of his car. Brough was told that if he did not consent, a search warrant would be secured anyway his car would be searched, and that Brough's consent would save them time and paper work. Brough was reluctant but finally gave his consent. Marijuana was found in the trunk of the car.

After consent was given, Brough was allowed to post $100 bond on the traffic charge and was released from jail. Later the reckless driving charge was reduced to careless driving and Brough pled guilty to it.

The issue on appeal is whether the marijuana was properly suppressed as illegally obtained. No search warrant was ever obtained. The State contends the consent was valid, or that lacking consent, there was probable cause for the search of the

car's trunk without a warrant.

The first determination is whether Brough's consent was voluntarily given. We affirm the district court's ruling that the consent was coerced.

The case of State ex rel. Kotwicki v. District Court, 166 Mont. 335, 532 P.2d 694 (1975), involved a similar situation, however, the facts of that case lack the coercive tenor of the police procedure here. Kotwicki was a transient picked up on the interstate highway for speeding, was offered bond but could not pay, was allowed to use the phone, and was only to be jailed until his friend arrived with the $15 bond money. His person was searched before being placed in a jail cell, and he spontaneously admitted a plastic bag found in his shoe contained marijuana. When asked if his car could be searched, he spontaneously admitted it was full of marijuana. He acknowledged a written statement of his right to refuse consent to the search.

The prosecution has the burden of proving by clear positive evidence that the individual freely and intelligently gave his unequivocal and specific consent to search, uncontaminated by any duress or coercion, actual or implied. State v. LaFlamme, ____Mont.____, 551 P.2d 1011, 33 St.Rep. 632, 634, and cases cited therein. As was stated in Schneckloth v. Bustamonte, 412 U.S. 218, 36 L Ed 2d 854, 863, 93 S.Ct. 2041 (1973):

> " * * * the question whether a consent was in
> fact 'voluntary' or was the product of duress or
> coercion, express or implied, is a question of
> fact to be determined from the totality of all
> the circumstances. * * *"

The evidence as recited herein was sufficient to support the finding of the district court of lack of voluntariness.

The State next contends that even if the consent was invalid, there was probable cause to search without a warrant.

In support of its contention the State offers the follow-

- 4 -

ing statements of fact and inferences: That many C-B radios had been stolen out of vehicles in the Havre area; that these radios are more easily stolen without detection of the thief in the early morning before sunrise; that Brough was out driving at 2:20 a.m.; that he was speeding; that when Officer Gillies turned on his red lights to pull him over, Brough continued to pass several cars; that when Brough finally stopped, he immediately emerged from the auto; that Officer Gillies observed a C-B radio and car stereo on the floor of the car on the driver's side in a vertical position as if they had been supported by Brough's leg; that in the back seat, partially covered, was a stereo tape player of the variety not usually found mounted in automobiles, and; also in the back seat were tools of the type commonly used in burglaries. The State argues that from all these facts a reasonable prudent man would infer that a theft had been committed and that evidence of the theft was to be found in Brough's vehicle.

We affirm the district court's finding that the police suspicions as to the possible stolen character of the C-B radio and stereo which they could see in defendant's car, as well as the possible burglar tools, do not provide probable cause for a search of the trunk of the vehicle.

The following additional facts were before the Court. There was no high speed chase or attempt to flee. The officers had no reports of thefts occurring that night or descriptions tying defendant to any crime. The C-B radio and car stereo were mounted in the car and attached with screws.

Brough claims the C-B radio and car stereo are his and the tape player in the backseat belongs to his brother. No one else had claimed them or identified them as being stolen.

The screwdriver, pliers and wrench found on the

- 5 -

floor in the back seat of Brough's automobile add nothing to the State's claims as they are as equally usable for noncriminal purposes as they are for burglar tools.

In both State v. Spielmann, 163 Mont. 199, 516 P.2d 617, and Chambers v. Maroney, 399 U.S. 42, 26 L Ed 2d 419, 90 S.Ct. 1975, the officers had information from eyewitnesses at the scene of the crime which was particular and reliable, which matched the defendants, their clothing and automobile when they were intercepted a short time after the crime.

This case is also distinguished from Hooks v. State of Oklahoma, 394 F.Supp. 1262 (1975), involving the search of a car stopped for speeding at 4:00 a.m. after it attempted to elude the pursuit. The officers saw four new tires in the back seat still bearing price tags. When the occupants gave an incredible account of them, the officers opened the trunk and found five more tires and a tool box later determined to be stolen from a service station that night.

Since we affirm the district court's finding of lack of probable cause for the search, it is unnecessary to decide the question of whether the officers could proceed without a search warrant after impounding the car overnight at the police garage and admittedly having time to obtain a warrant under the recent decision of Texas v. White, 423 U.S. 67, 46 L Ed 2d 209, 96 S.Ct. 304 (1975). See White v. State, (Tex.Crim.App. (1974)) 521 S.W.2d 255, 257, the same case, rehearing denied, holding the exigencies required for a warrantless search of the car were not present 30 to 50 minutes after the car had been taken to the station and the defendant arrested.

The order of the district court is affirmed.

_____
Justice

- 6 -

We concur:

_____
Chief Justice

_____

_____
Justices

_____
Hon. LeRoy L. McKinnon, District
Judge, sitting in place of Mr.
Justice Wesley Castles.

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 13434

STATE OF MONTANA,

        Plaintiff and Appellant,

vs.

STEVEN ALLEN BROUGH,

        Defendant and Respondent.

FILED

DEC- 7 1976

Thomas J. Kearney

CLERK OF SUPREME COURT
STATE OF MONTANA

ORDER AMENDING OPINION

The following amendment of the above named opinion decided on November 29, 1976, is hereby ordered:

Beginning with the eighth line from the bottom of the 6th page please amend the opinion to read as follows:

"garage and admittedly having time to obtain a warrant in light of the recent decision of Texas v. White, 423 U.S. 67, 46 L Ed 2d 209, 96 S.Ct. 304 (1975), reversing White v. State, (Tex.Crim.App. (1974)) 521 S.W.2d 255, 257, which had held the exigencies required for a warrantless search of the car were not present 30 to 50 minutes after the car had been taken to the station and the defendant arrested."

DATED this 7th day of December, 1976.

_____
                        Chief Justice