Edward Thompson, J.
Defendant moves for a hearing authorized by the decision in Stovall v. Denno (388 U. S. 293 [1967]) to determine whether the pretrial and trial identifications of petitioner Alvin L. Mitchell, by People’s witness, J ames F. Lewis, were so unnecessarily suggestive and conducive to irreparable mistaken identification that petitioner was denied due process of law. If he prevails, as aforesaid, he also moves to vacate and set aside the judgment of conviction and sentence of May 6,1965.
Alvin L. Mitchell was indicted on September 5, 1963 for the crime of murder in the first degree. He was tried on this indictment during the month of June, 1964. On June 26, 1964, the jury, unable to agree on a verdict, was discharged and the defendant was retried during the months of February and March, 1965. On March 12,1965 the defendant was found guilty of the crime of manslaughter in the first degree by verdict of a jury and was sentenced, on May 6, 1965, to the Elmira Reception 'Center for a term of not less than 10 years nor more than 20 years. On May 14, 1965 the defendant filed a notice of appeal. At the present time defendant has not perfected this appeal.
Unquestionably the law is now well settled that a confrontation which is so unnecessarily suggestive and conducive to irreparable mistaken identification is a denial of due process of law. (Stovall v. Denno, supra; People v. Ballott, 20 N Y 2d 600; People v. Brown, 20 N Y 2d 238.) The novel question which *17 confronts the court at this time is one of procedure and jurisdiction to test an allegation of denial of due process upon such grounds in a case where an appeal is pending from a judgment of conviction.
The defendant cites many cases in support of his motion, but such cases neither indicate nor authorize in any manner this court’s affirmative disposition of this motion. On the contrary, the cases cited seem to indicate the opposite and this for a reason which is both compelling and direct.
The instant motion is not the usual pretrial motion to test the legality of an identification, presently known as a Wade or Gilbert hearing. Bather, it is one made to the trial court almost four years after conviction and sentence. It is one made in a case where an appeal is still pending. Thus it cannot even be connoted a post conviction remedy sought after the appellate process has been exhausted.
The defendant labels his motion as one seeking a “ Stovall ” hearing as distinguished from a “Wade or Gilbert” hearing. Stovall (swpra) succinctly provides (p. 296) that “ Wade and Gilbert [388 U. S. 218 and 388 U. S. 263] affect only those cases and all future cases which involve confrontations for identification purposes conducted in the absence of counsel after this date ” (e.g., June 12, 1967). Moreover, that court also concluded (p. 300) that “for these purposes, no distinction is justified between convictions now final, as in the instant case, and convictions at various stages of trial and direct review.” This language compels the conclusion that once a defendant has been convicted prior to June 12, 1967, he is not entitled to a hearing, be it labeled Wade, Gilbert, Stovall, or any combination thereof. Bather, his remedy must be via another route.
The defendant’s reliance on People v. Ahmed (20 N Y 2d 958 [Dec., 1967]), though chronologically similar to the instant case, seems to be misplaced. Therein a fundamental error by the prosecution in failing to disclose exculpatory evidence to the jury appears to be the motivation for a reversal, hearing and new trial. In the instant case, all the facts, both exculpatory and inculpatory, concerning identification by the witness herein, were before the jury and are contained in the trial record for review on appeal.
This court might very well assume jurisdiction in this matter by considering the application to be one in the nature of a writ of error coram nobis, but to do so would necessitate a denial of the motion without a hearing since the defendant admits in his moving papers that the matters to be considered are all part of the record (People v. Sadness, 300 N. Y. 69 [1949] and cases *18 there following), which record is in all its aspects now to he reviewed on appeal. In fact, the defendant states in his papers “ This application on petitioner, alvix l. mitchell’s behalf, is made on counsel’s petition alone, for the reason that the basis of the application lies entirely in the official record of the proceedings previously had herein, and, more particularly, in the minutes of the testimony of People’s witness, james e. lewis, at the trial of petitioner on February 23, 1965 ”. A writ of error cor am nobis is not and should not be an appellate procedure. It is not a substitute for an appeal. Where alleged errors of fact or law are said to exist they may be urged on appeal. Were facts alleged to exist dehors the record, other cor am nobis relief might be sought.
Citing Matter of Morhous v. Supreme Ct. of New York (293 N. Y. 131) and Matter of Lyons v. Goldstein (290 N. Y. 19) in support of a theory that the trial court at all times has the power and authority to grant “ corrective judicial process ” yields the defendant no real advantage. Factually, these cases revived the writ of coram nobis theretofore lost in judicial antiquity. Lyons (supra [1943]), with no use of legerdemain, merely lifted it from concealment and gave the trial court the authority to set aside its judgment since the plea of guilty was based upon fraud.
Morhous (supra, p. 140 [1944]), using the Lyons case as authority, held that ‘ ‘ An appeal to a higher court is ordinarily the appropriate corrective process for error at the trial and appearing in the record; a motion to vacate the judgment and for a new trial is ordinarily the appropriate corrective process for defect not appearing on the record or where for any other reason an appeal would not furnish a remedy.” (Emphasis supplied.) At such latter time, coram nobis would be a proper remedy.
This motion, however, is based upon the record and the record alone. It follows that the remedy is by appeal and appeal alone, this until the Court of Appeals holds otherwise. A contrary holding would be disruptive of the appellate process and a most pretentious and presumptuous act of the trial court. Furthermore, it would be disruptive of the function and responsibility of the process of jury trial.
Defendant further contends that the distinction between the various postconviction remedies in New York has become blurred so as to be nonexistent. He cites People ex rel. Rohrlich v. Follette (20 N Y 2d 297) and People ex rel. Keitt v. McMann (18 N Y 2d 257), and to some extent this seems to be true. Herein he fuses coram nobis and habeas corpus into a *19 bland potion for relief. While these cases hold that habeas corpus “is an appropriate proceeding to test a claim that the relator has been imprisoned after having’ been deprived of a fundamental constitutional or statutory right in a criminal prosecution ”, McMcmn (supra, p. 262) affirmatively propounds that “ Departure from traditional orderly proceedings, such as appeal, should be permitted only when dictated, as here, by reason of practicality and necessity.”
It should here be noted that where petitioner alleges a violation of due process, common sense would require that for the proper administration of criminal justice a State court should afford a defendant a collateral remedy even though there is no Federal compulsion so to do. The reason therefor is both obvious and simple. There is always a Federal remedy available to a defendant and, since that is so, comity in Federal-State relations requires the ¡State to so participate in the administration of criminal justice. Legal chaos might well ensue if this be not the case to any substantial extent. However, the one solid and unwavering requirement has always been that the defendant is required to exhaust his available State remedies before applying to the Federal courts. (U. S. Code, tit. 28, § 2254; Fay v. Noia, 372 U. S. 391, 435 [1963]; Brown v. Allen, 344 U. S. 443, 448 [1953].) I clearly state here that the defendant’s available State remedy is by way of perfecting his pending appeal. When that is decided, a postconviction remedy may be sought in this State and, if the defendant there fails, he may then move Federally.
Obviously no showing of practicality and necessity as required by Keitt {supra) has been shown. A mere allegation of deprivation of due process is alleged to lie in the record. Contrariwise, the record discloses a substantial quantum of inculpatory evidence, including among other things the defendant’s own testimony, his alleged confession and the testimony of an alleged accomplice in a burglary committed shortly before the homicide, all of which, when considered in the totality of the circumstances, could justify invoking the doctrine of harmless error, even assuming error was made.
In any event, without deciding whether or not habeas corpus would be a proper remedy in this case, such writ would not lie in this court for lack of jurisdiction. CPLB 7004 (subd. [c]) makes such writs to secure the discharge of a person from a State institution returnable within the county in which the person is detained, which obviously is not Queens County. (Matter of Hogan, v. Culkin, 18 N Y 2d 330 [1966].) While it is true that leading jurists and legal scholars have advocated *20 the return of such writs before the trial court where the conviction occurred, such an amendment has not yet been adopted by the Legislature.
Accordingly, since an appeal from the judgment of conviction is still pending, since the entire question to be decided is completely within the trial record, and since no jurisdiction for relief in the nature of habeas corpus here exists, the motion is denied in all respects. Order entered accordingly.