STATE OF NEW JERSEY IN THE INTEREST OF R. H.,
A JUVENILE.

Juvenile and Domestic Relations Court
Passaic County

August 3, 1979.

*Mr. Michael J. O'Shea* for the State (*Mr. Burrell Ives Humphreys,* Prosecutor of Passaic County, attorney).

*Mr. Neil C. Batelli* for defendant.

FERRANTE, P. J. J. D. R. C.

At issue in this case is the extent of a probationer's 4th Amendment rights. This matter raises the following issue of first impression in New Jersey: does the 4th Amendment to the United States Constitution prohibit the admission in a criminal juvenile delinquency complaint of evidence seized from a probationer by her probation officer without a search warrant or probable cause justifying a warrantless search. The prosecutor

contends that R.H. lost her 4th Amendment right against illegal searches and seizures as a probationer.

There has been no evidentiary hearing, the parties have stipulated to the pertinent facts.

The facts as stipulated are as follows. On June 30, 1978 R.H.'s probation officer received an anonymous telephone call that R.H. was coming to the Passaic County Probation Department with a dangerous weapon. On arrival, and at her officer's request, R.H. emptied her purse, causing a knife to fall into view. The probation officer then caused a criminal juvenile delinquency complaint to be sworn out against R.H. for illegal possession of a dangerous weapon. To date no charge of violation of probation has been brought against R.H. pursuant to this incident.

The State argues the validity of the search. It contends that when defendant signed a statement acknowledging the rules and conditions of probation, she thereby waived certain constitutional rights possessed by one charged with a crime. The state specifically relies on four probation conditions as constituting such waiver: No. 1, refrain from crimes; No. 6, avoid injurious habits; No. 9, answer all reasonable inquiries, and No. 10, cooperate with the probation department in its efforts to help the probationer maintain a satisfactory standard of conduct. Nowhere does the State cite a condition which is a specific waiver of constitutional rights. The State also contends that defendant consented to the search.

Defendant argues that standard New Jersey conditions of probation do not clearly and positively inform a probationer that he waives his constitutional right against illegal searches and seizures. Defendant also contends that the State has not proven unequivocal, intelligent and voluntary consent to the search.

Moreover, defendant contends that the receipt of an anonymous telephone call, without more, does not give rise to probable cause sufficient to justify a warrantless search.

I agree with defendant's position.

 The court disagrees that mere acknowledgment of the standard conditions of probation implies a waiver of constitutional rights.

A basic tenet of constitutional law is that a waiver of constitutional rights is not easily upheld. "[The] 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights, and 'do not presume acquiescence in the loss of fundamental rights'." *Johnson v. Zerbst*, 304 *U.S.* 458, 464, 58 *S.Ct.* 1019, 1023, 82 *L.Ed.* 1461 (1938).

The courts have followed *Johnson* in waiver situations.

 As stated in *Allied Artists Pictures Corp. v. Alford*, 410 *F.Supp.* 1348, 1354 (W.D.Tenn.1976), "A waiver of constitutional rights is possible, but a waiver of fundamental rights is not lightly inferred or assumed." Further, "waiver of constitutional rights is not to be presumed." *U. S. v. Corbitt*, 541 *F.*2d 146 (3 Cir. 1976).

 The law governing waiver of constitutional rights by criminal defendants is very specific in what has to be proven. As stated in *U. S. v. Carlson*, 547 *F.*2d 1346, 1358 (8 Cir. 1976), cert. den. 431 *U.S.* 914, 97 *S.Ct.* 2174, 53 *L.Ed.*2d 224 (1977), "To constitute a valid waiver of constitutional rights there must be 'an intentional relinquishment or abandonment of a known right or privilege' by the accused."

 A waiver must be clearly understood by the defendant; as stated in *Karr v. Blay*, 413 *F.Supp.* 579, 583 (N.D.Ohio 1976), "a defendant cannot be deprived of his liberty by an unknowing and silent waiver of his rights."

 Simply put, the standard conditions of probation in New Jersey do not sufficiently apprise a probationer that he is waiving any of his 4th Amendment rights. It is a fundamental principle that a waiver must be known and intentional, not presumed or inferred. Clearly, there was no valid waiver by R.H. of her constitutional rights when she signed the acknowl-

edgment of probation form and the standard conditions therein. None of the conditions quoted by the prosecutor includes a clear waiver of constitutional rights.

If the terms of probation governing R.H. had been more specific, a different result might have occurred.[1]

■ This court holds that a probationer does not waive his 4th Amendment rights in a new criminal action merely by his status as a probationer.[2]

*People v. Jackson*, 46 *N.Y.2d* 171, 385 *N.E.2d* 621, 412 *N.Y.S.2d* 884 (Ct.App.1978), is instructive; the facts are similar. In that case there was also no probable cause to believe defendant-probationer was committing a crime; there was only an anonymous accusation given by telephone to his probation officer. On the basis of this call the probation officer searched the probationer's work locker, finding a small hand gun. A probation revocation hearing was held and a new criminal complaint sworn out. The Court of Appeals admitted the gun to the revocation hearing but suppressed it in the new criminal action. The court stated:

To uphold the search in this case would hardly be consistent with the recognition of a probationer's constitutional right to be free of unreasonable

[1]The law of the nation, and recently of New Jersey, upholds warrantless searches of probationers when only pursuant to specific probation terms that clearly waive constitutional rights. *State v. Bollinger*, 169 *N.J.Super.* 553 (Law Div. 1979), addressed the constitutionality of special probation terms. The *Bollinger* court upheld the otherwise illegal search of a probationer's home and car on the basis of special probation drug rules. Special rule No. 6 permitted at any time a search by a probation officer of any place or thing under a probationer's immediate control. The court held that by agreeing to the drug dependency rules, the defendant waived his 4th Amendment rights in regard to illegal searches.

[2]Though not a specific issue in this matter, it is clear that the knife in question would be admissible in a revocation of probation hearing. Although a probation revocation may result in a defendant's loss of liberty, it is not a stage of a criminal prosecution. *State v. Generoso*, 156 *N.J.Super.* 540 (App.Div.1978). To the same effect, see also, *U. S. v. Hill*, 447 *F.2d* 817 (7 Cir. 1971); *Lombardino v. Heyd*, 318 *F.Supp.* 648 (E.D.La.1970), and *People v. Dowery*, 20 *Ill.App.3d* 738, 312 *N.E.2d* 682 (Ct.App.1974).

searches and seizures. If that right means anything it must at least mean that a probationer who has not previously violated the conditions of his sentence should not be subjected to a complete search of his person and property whenever his probation officer receives an anonymous phone call. [385 *N.E.2d* at 624, 412 *N.Y.S.2d* at 887]

*Croteau v. State*, 334 *So.2d* 577 (Fla.Sup.Ct.1976), is also instructive. There defendant's probation officer conducted what the court admitted to be an illegal search and seizure. The state sought to uphold the search on the grounds of the defendant's status as a probationer. The court held that:

* * * a probation officer has authority to enter upon the living quarters of his probationer to observe his life style and any material evidence thereby discovered is admissible in proceedings for revocation of probation, but this does not validate an otherwise unreasonable search for contraband resulting in prosecution for a separate criminal offense. [at 580]

The *Croteau* Court explicitly held (at 579) that "One does not absolutely forfeit the protection of the 4th Amendment's prohibition of unreasonable searches and seizures merely by assuming the status of a probationer." The Florida court then cited *Martin v. U. S.*, 183 *F.2d* 436 (4 Cir. 1950); *Brown v. Kearney*, 355 *F.2d* 199 (5 Cir. 1966), and *State v. Gansz*, 297 *So.2d* 614 (Fla.Ct.App.1974), to the same effect.

Research has shown the following cases to also be supportive: *Lombardino v. Heyd*, 318 *F.Supp.* 648 (E.D.La.1970); *People v. Dowery*, 20 *Ill.App.*3d 738, 312 *N.E.2d* 682 (App.Ct.1974); *Brown v. Kearney*, 355 *F.2d* 199 (5 Cir. 1966); *U. S. v. Hallman*, 365 *F.* 2d 289 (3 Cir. 1966), and *State v. Cullison*, 173 *N.W.2d* 533 (Iowa Sup.Ct.1970).

Therefore, absent probable cause, the warrantless search of defendant cannot be justified by her status as a probationer.

The prosecutor contends that R.H. consented to the search, thereby validating it. The defendant claims it was involuntary and coerced. In regard to the issue of consent the court is

governed by *Schneckloth v. Bustamonte*, 412 *U.S.* 218, 93 *S.Ct.* 2041, 36 *L.Ed.*2d 854 (1973), wherein the minimum constitutional requirements are outlined. This court is also bound by *State v. Johnson*, 68 *N.J.* 349 (1975), wherein our Supreme Court (at 354) imposed the additional requirement of the State having to show "that the person involved knew that he had a right to refuse to accede to such a request."

This court is satisfied that the consent was valid under *Bustamonte, supra*; based upon the totality of all the circumstances it was voluntary and not the product of duress or coercion.

However, as a threshold matter, the court is satisfied from the facts of this case that the State has failed to meet the additional requirement imposed by *Johnson, supra*—specifically, that the State has not demonstrated knowledge on the part of R.H. that she had a choice as to the probation officer's demand to empty her pocketbook. The probation officer made no effort to inform R.H. of her rights; instead she quickly demanded that the purse be emptied. R.H. is a confused juvenile with psychiatric problems. She is almost naive in her knowledge of society; to expect her to have had a knowledge of her right to withhold consent is erroneous. The court holds, accordingly, that R.H.'s consent was not unequivocally, intelligently and voluntarily given, as required in *State v. King*, 44 *N.J.* 346 (1965), and *State v. Rice*, 115 *N.J.Super.* 128 (App.Div.1971).

In determining the existence of probable cause the court finds it permissible to rely on a less stringent standard when defendant is a probationer. As stated in *State v. Waltz*, 61 *N.J.* 83, 87 (1972), probable cause "is not a technical concept but rather one having to do with 'the factual and practical considerations of every day life' upon which reasonable men, not constitutional lawyers, act." The court described it as a "well grounded" suspicion that a crime has been or is being commit-

ted. *Cf. State v. Burnett,* 42 *N.J.* 377, 387 (1964). Obviously, a defendant's status as a probationer is a relevant element in deciding whether probable cause existed. As stated in *Croteau, supra* at 579, "probationary status may be taken into account in determining whether a particular search was in fact reasonable." The *Jackson* ((*supra*) court also stated at 385 *N.E.*2d at 623, 412 *N.Y.S.*2d 886), "Of course the defendant's status as a parolee or probationer is relevant in determining the reasonableness of the search."

R.H.'s probation status is a factor that would normally weigh in favor of finding probable cause. The facts of the case, however, negate this presumptive inclination. R.H. was on probation for a JINS (juvenile in need of supervision) offense, not for a juvenile delinquency criminal offense. She has never, in fact, been guilty of any criminal act. Her probation officer was aware of her noncriminal history. When the background of R.H.'s probation is revealed, little support for probable cause is evidenced.

The probation officer based her search solely on an anonymous telephone call. These facts do not constitute probable cause justifying the warrantless search.

For all the foregoing reasons the court suppresses the knife as admissible evidence in the criminal action for illegal possession of a dangerous weapon.